[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV 18, 2008
THOMAS K. KAHN
CLERK

_____

No. 08-12229
Non-Argument Calendar
_____

Agency Nos. A98-736-432
A98-736-433

CARLOS VINCENZO DAMATO-SIFONTES,
KATIUSKA JOSEFINA DAMATO-PUERTAS,
KATHRYN ALEJANDRA DAMATO-PUERTAS,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

**(November 18, 2008)**

Before WILSON, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

Carlos Damato-Sifontes and his family, natives and citizens of Venezuela,

petition this Court for review of the decision of the Board of Immigration Appeals that denied Damato-Sifontes's motion to reconsider. Damato-Sifontes argues that the Board failed to consider the statements in his written application that he had been persecuted because he opposed the Hugo Chavez government. We grant the petition to Damato-Sifontes, but deny the petition to his wife and daughter, vacate the denial of the motion to reconsider, and remand for further proceedings.

## I. BACKGROUND

Damato-Sifontes, his wife, Katiuska Damato-Puertas, and their daughter, Kathryn Damato-Puertas, were admitted to the United States in December 2003 as nonimmigrant visitors. In April 2005, Damato-Sifontes, on behalf of himself, his wife, and their minor daughter, filed an application for asylum and withholding of removal under the Immigration and Nationality Act and the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment. They sought relief based on their political opinion and membership in a particular social group.

In an addendum to the application, Damato-Sifontes alleged that he was harassed and later persecuted for his opposition to the Chavez government. Damato-Sifontes alleged that, as a sub-inspector of the Venezuelan Intelligence and Prevention Services, he assisted in the defeat of a coup d'etat by Hugo Chavez in 1992. After Chavez was elected president in 1998, Damato-Sifontes was

2

interrogated, called a traitor, and forced to retire. After retirement, the government failed to deposit his pension and required him to travel to Caracas to update his personal information. Later, a police official called Damato-Sifontes and told him he did not deserve to draw a pension, but that internal regulations required the police to pay the benefits.

Damato-Sifontes alleged that after his retirement, he became a "militant," but not a "member," of a political organization called Democratic Action that opposed the Chavez regime. He distributed propaganda and attended six or seven demonstrations in 2002 and 2003 to oppose the Chavez government. Damato-Sifontes participated in the demonstrations without incident.

Damato-Sifontes alleged that his situation changed after he demonstrated at the Altamira Plaza in Caracas on February 4, 2003. En route home the next day, a jeep that resembled an official vehicle of the Venezuelan police began to pass his car. Damato-Sifontes saw a person wearing a balaclava leaning out of the jeep holding a firearm. Damato-Sifontes slammed on his breaks and made a U-turn, then heard gunfire. He sped away and rested at a distant gas station for the rest of the evening. Damato-Sifontes suspected initially that the incident was an attempted robbery, but the next day he received an anonymous phone call and a man said, "You were saved, damn 'escualido' . . . but next time we will burn down your family and you, if you keep going to Altamira." Damato-Sifontes explained

3

in the addendum that the term "escualido" was "a term used to allude [to] the enemies of the government."

Damato-Sifontes alleged that he and his family made preparations to leave the country, but the government refused to give Damato-Sifontes his passport. Damato-Sifontes traveled to Caracas and hid in the home of his mother-in-law until he was able to obtain the passport. After Damato-Sifontes obtained a visa from the American Embassy, he and his family fled to the United States. After their arrival, the Venezuelan government ceased paying Damato-Sifontes's pension.

At the hearing, Damato-Sifontes did not explain that the anonymous caller threatened him because of his activities at Altamira. Damato-Sifontes described the shooting and his escape and blamed the Venezuelan police. When questioned about the telephone call, Damato-Sifontes testified that he received a call that registered on his caller identification as "restricted" and that the message contained death threats.

The immigration judge ruled that Damato-Sifontes's application for asylum was untimely and, in the alternative, the application failed on the merits. The judge did not make an adverse finding about Damato-Sifontes's credibility, but the judge stated that a memo from the Venezuelan Ministry of Interior Relations, which stated that Damato-Sifontes was "given the benefit of retirement by way of

4

grace" and conveyed "feelings of consideration and esteem" and gratitude for his "invaluable services," suggested that Damato-Sifontes was not "perceived officially as a traitor . . . ." The immigration judge also found "significant" that Damato-Sifontes did not "mention any problems" during his demonstrations in 2002 and 2003.

The immigration judge credited Damato-Sifontes's testimony that shots were fired at him and that he received a telephone call the next day from an unidentified caller, but the judge did not mention the allegations made by Damato-Sifontes in his application that the caller attributed the incident to the political activities at Altamira. The immigration judge ruled that Damato-Sifontes's retirement and problems regarding his pension payments constituted harassment. The immigration judge found that there was "no hard evidence" to establish that Damato-Sifontes "ever had any problems in Venezuela for any of the five previously enumerated grounds." The judge also found there was "no corroborating evidence to indicate that any of the statements that [Damato-Sifontes] made happened." In regard to the shooting, the court found that "there [was] no evidence whatsoever that this had anything to do with one of the five previously enumerated grounds or of who did it and why."

The Board of Immigration Appeals dismissed the appeal by Damato-Sifontes and his family. The Board affirmed that the application for asylum was

untimely and found that Damato-Sifontes and his family failed to establish that conditions had changed in Venezuela to excuse the untimely application. The Board then considered the merits of Damato-Sifontes's application for withholding of removal and relief under the Convention. The Board "assume[d] for purposes of adjudicating the appeal that [Damato-Sifontes] testified credibly, and affirm[ed]" the conclusion of the immigration judge that Damato-Sifontes "failed to meet his burden of proof establishing that it is more likely than not that he will be persecuted on account of a protected ground if he is returned to Venezuela."

The Board considered separately the shooting and the phone call. The Board "affirm[ed]" the conclusion of the immigration judge that Damato-Sifontes "failed to establish a nexus between [the shooting] and a protected ground." The Board found "there [was] no evidence at all to confirm [Damato-Sifontes's] suspicions that the shots were fired by [government] officers" or that "this event was connected in any way to the demonstration that [Damato-Sifontes] attended in Caracas the previous day." The Board found that Damato-Sifontes referred to the shooting incident as an "attempted robbery" and found "no basis upon which to disturb the Immigration Judge's conclusion that 'there is no evidence whatsoever this had anything to do with one of the five previously enumerated ground[s] or of who did it or why.'" In a separate paragraph, the Board "agree[d]" with the

6

immigration judge that the "single threatening anonymous phone call" did not "rise[] to the level of prosecution."

Damato-Sifontes and his family moved for reconsideration. Damato-Sifontes argued that he was entitled to an exception from the filing deadline because of changed conditions in Venezuela. He also argued that the Board erred by finding that he presented no evidence to establish that he was targeted for his political activities. Damato-Sifontes repeated the statement in his application that the anonymous caller told him that "we will burn down your family and you, if you keep going to Altamira." The Board denied the motion and ruled that Damato-Sifontes had "not identified any material factual or legal errors in the prior decision that are supported by pertinent authority."

## II. STANDARD OF REVIEW

We review the denial of a motion to reconsider for abuse of discretion. Calle v. U.S. Att'y Gen., 504 F.3d 1324, 1328 (11th Cir. 2007).

## III. DISCUSSION

Damato-Sifontes and his family challenge the denial of their motion to reconsider factual findings by the Board. The family does not challenge the finding that their application for asylum was untimely, which we lack jurisdiction to review. Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003). Because only claims for withholding of removal and relief under the Convention

remain, and these regulations do not provide for derivative benefits, we deny the petition to Damato-Sifontes's wife and daughter. See 8 C.F.R. § 208.16(c); Delgado v. U.S. Att'y Gen., 487 F.3d 855, 862 (11th Cir. 2007) (per curiam).

An alien may file a motion to reconsider to point out factual errors in the decision of the Board. That motion must "specify[] the errors of fact or law in the prior Board decision and . . . be supported by pertinent authority." 8 C.F.R. § 1003.2(b)(1). The Board abuses its discretion when its decision is arbitrary or capricious. See Abdi v. U.S. Att'y Gen., 430 F.3d 1148, 1149 (11th Cir. 2005).

The Board abused its discretion by denying Damato-Sifontes's motion to reconsider. Damato-Sifontes argued that the Board erred by finding that there was "no evidence at all" to suggest that the shooter was motivated by Damato-Sifontes's political activities. The Board credited Damato-Sifontes's testimony that the shooting occurred after he attended a rally opposing the Chavez government and that he received an anonymous call the next day, but the Board failed to consider Damato-Sifontes's statement in his application that the caller professed responsibility for the shooting and threatened to kill Damato-Sifontes and his family if he participated in further demonstrations at Altamira Plaza. The Board also failed to consider whether the caller related the shooting and the protests.

We vacate the denial of Damato-Sifontes's motion. When the Board has not

addressed an issue of fact raised by a petitioner "'the proper course . . . is to remand to the agency for additional investigation or explanation.'" Calle, 504 F.3d at 1329 (quoting INS v. Ventura, 537 U.S. 12, 16, 123 S. Ct. 353, 355 (2002) (per curiam)). We remand to the Board to consider whether the shooting and Damato-Sifontes's political activity were related and whether Damato-Sifontes is entitled to withholding of removal.

## IV. CONCLUSION

We **DENY** the petition to Damato-Sifontes's wife and daughter. We **GRANT** Damato-Sifontes's petition, **VACATE** the order that denied Damato-Sifontes's motion to reconsider, and **REMAND** for further proceedings.

**PETITION GRANTED IN PART AND DENIED IN PART. VACATED AND REMANDED.**